IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| DOUGLAS A. FARRELL, ) | |
| ) | Bankruptcy No. 16-01184 |
| Debtor. ) | |
| ) | |
| KAREN K. TOVAR, ) | |
| ) | |
| Plaintiff, ) | Adversary No. 16-09049 |
| ) | |
| v. ) | |
| ) | |
| DOUGLAS A. FARRELL, ) | |
| ) | |
| Defendant. ) | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND
PLAINTIFF'S MOTION TO REQUEST JUDGMENT REMAIN IN PLACE**

This matter came before the Court at a telephonic hearing on October 13, 2017. Sean Heitmann appeared for Debtor Douglas Farrell ("Debtor"). Creditor Karen Tovar ("Tovar") appeared pro se. The Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### STATEMENT OF THE CASE

Tovar is a creditor with a state court judgment. Tovar argues that Debtor's debts are either not dischargeable as to her or that debtor is not entitled to discharge any of his debts. She argues that Debtor made misrepresentations to the Court by inaccurately reporting his income, failing to provide sufficient documentation to prove that his income is correct, failing to list his children as

creditors in his bankruptcy filing, and generally manipulating the bankruptcy system. Debtor argues that Tovar has failed to provide evidence to support her allegations. Debtor argues that he reported his income accurately, he did not fail to list his children, and he has not manipulated the bankruptcy system.

## STATEMENT OF THE FACTS

Tovar and Debtor were in a relationship from the summer of 2010 to the fall of 2015. During their relationship, Tovar lent Debtor money to help pay bills and cover other expenses. Later, Tovar sued Debtor in Iowa District Court for Hardin County to recover the money she had loaned him. During the state court trial, Debtor testified that, in addition to borrowing money from Tovar, he had also borrowed money from his children. He stated that his children have told him that he does not need to pay them back. Debtor said, however, that he did intend to pay his son back.

On March 24, 2016, the Iowa District Court for Hardin County entered a $13,760.00 judgment in favor of Tovar for loans she made in 2014 and 2015. Tovar then attempted to garnish Debtor's wages.

On September 12, 2016, Debtor filed this Chapter 7 bankruptcy. At the time of the filing, Oberg Freight employed Debtor as a truck driver. Debtor's schedules report that his gross income from employment from January 1, 2016 through the date of his filing totaled $11,399.23, and his 2015 gross income from employment totaled $36,200.00. His 2015 gross income consisted of both nontaxable per diem

2

pay and taxable wages. While on the road, Debtor received a per diem for food of $63 a day. He also reported 2016 income. Debtor shows that, from January 22, 2016 to May 1, 2016, he received $7,124.38 in workers' compensation.

On November 16, 2016, Tovar filed this adversary. Tovar alleges that Debtor underestimated his income and made other fraudulent statements and misrepresentations that made his debt to her not dischargeable—or alternatively, that his entire discharge should be denied. In general, Tovar argues that Debtor has money to pay his debts but simply filed bankruptcy to avoid paying.

Tovar's initial complaint was deficient and the Court granted her time to cure the deficiencies. Tovar filed an amended complaint on December 29, 2016. Tovar did not set out what particular statutes she relies on in her either her initial or amended complaint. After reviewing the allegations in those complaints, the Court finds that her allegations seem to best fit under § 523(a)(2)(A) or § 727(a)(4)(A). Section 523(a) provides: "A discharge . . . does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a). Section 727(a)(4) provides: "The Court shall grant the Debtor a discharge unless . . . the Debtor knowingly and fraudulently, or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a). Tovar's allegations in this case all relate to Debtor's

3

honesty to this Court with respect to his income and his creditors. The Court will thus consider her prayer for relief as if made under § 523(a)(2)(A) and § 727(a)(4).

On January 25, 2017, Debtor filed a combined motion to dismiss and motion for a more definite statement. The Court denied Debtor's motion to dismiss and granted the motion for a more definite statement. Tovar complied with the order for a more definite statement and replied to Debtor's motion.

On June 23, 2017, Tovar filed what was captioned as Motion to Request Judgment Remain in Place in which, among other things, she requested that Debtor provide contact information for his three children. On July 28, 2017, the Court ordered Debtor to provide this contact information. Debtor provided contact information for two of his children but did not provide the contact information for his son because Debtor does not have his son's contact information. Apart from this request, Tovar's Motion to Request Judgment Remain in Place effectively asks the Court for the same relief prayed for in her complaint—that the Court rule Debtor's debt is nondischargeable.

On July 31, 2017, Debtor filed this motion for summary judgment. Debtor argues that all of the income information he has provided is accurate. He argues that Tovar has provided nothing to dispute the accuracy of his income information. Debtor argues that Tovar's remaining factual allegations—about his per diem pay, his alleged failure to not list his creditor children, and general allegations about manipulating the bankruptcy system—have no basis in the record.

4

On September 21, 2017, the Court held a hearing on the motion. At that hearing, Tovar referenced a number of exhibits that were not in the summary judgment record. The Court then continued the hearing to allow Tovar to submit a formal response to Debtor's motion for summary judgment along with the exhibits she referenced into the summary judgment motion record. Tovar had filed trial exhibits and was referencing those trial exhibits. The continuance allowed her time to file these exhibits as a part of her resistance to summary judgment. The Court held the telephonic hearing on this matter on October 13, 2017.

The Court notes that Tovar's Motion to Request Judgment Remain in Place is substantively similar to her resistance to Debtor's motion for summary judgment. Accordingly, in making its ruling, the Court has considered Tovar's formal resistance, all the exhibits that she referenced in her resistance, and her Motion to Request Judgment Remain in Place.

## CONCLUSIONS OF LAW AND ANALYSIS

Debtor filed a motion for summary judgment. Federal Rule of Civil Procedure 56 applies in adversary proceedings. Fed. R. Bankr. P. 7056. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there is no material factual dispute." Bremer Bank v. John Hancock Life Ins. Co., 601 F.3d 824, 829

(8th Cir. 2010). The non-moving party must set out specific facts showing a genuine dispute for trial. Yuska v. Internal Revenue Serv. (In re Yuska), Bankr. No. 14-01504, Adv. 15-9005, 2017 WL 571486, at *5 (Bankr. N.D. Iowa Feb. 13, 2017). Bare assertions made by the non-moving party alone are insufficient to defeat a motion for summary judgment. Id.

As noted, the Court construes Tovar's complaint as potentially seeking relief under either § 523(a)(2)(A) or § 727(a)(4)(A). "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted) (internal quotation marks omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The Court will address Tovar's arguments under each of these sections.

**I.     § 523(a)(2)(A)**

Section 523(a) provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a). In order to have a discharge denied under § 523(a) the creditor must show:

> (1) The debtor made a representation; (2) The debtor knew the representation was false at the time it was made; (3) The representation

6

was deliberately made for the purpose of deceiving the creditor; (4) The creditor reasonably relied on the representation; and (5) The creditor sustained the alleged loss as the proximate result of the representation having been made.

Am. Nat'l Bank v. Lewis (In re Lewis), Bankr. No. 15-02519-ALS7, Adv. Pro. 16-30011-ALS, 2017 WL 2274946, at *2 (Bankr. S.D. Iowa May 24, 2017) (quoting R & R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010)).

Tovar has not provided evidence to raise a genuine dispute of material fact on this issue. There is no evidence that Tovar relied on any misrepresentation or that any alleged misrepresentation was the proximate cause of Tovar's loss. Tovar's state court judgment is based on loans she made in 2014 and 2015. Tovar could not have relied upon any misrepresentation in Debtor's 2017 bankruptcy filing in making loans to him years earlier. Even if there were misrepresentations in Debtor's bankruptcy filing, it would not be the proximate cause of the losses previously incurred by Tovar. The Court concludes that Debtor is entitled to judgment as a matter of law on this issue.

### II.   § 727(a)(4)(A)

Section 727(a) provides:

The court shall grant the debtor a discharge, unless— . . .
(4) the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account . . . .

11 U.S.C. § 727(a). Section 727(a)(4)(A) requires a showing that:

7

> (1) The debtor made a statement under oath; (2) The statement was false; (3) The debtor knew the statement was false; (4) The debtor made the statement with fraudulent intent; and (5) The statement related materially to the bankruptcy case.

First Am. Bank v. Andrews (In Matter of Andrews), 540 B.R. 379, 386 (Bankr. S.D. Iowa 2015). Statements made in a bankruptcy petition and schedules are made under oath. Fokkena v. Juehring (In re Juehring), 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005). The debtor's course of conduct and surrounding circumstances may establish intent. Id. "The denial of a debtor's discharge is a harsh sanction, therefore, the provisions of 11 U.S.C. § 727(a) are strictly construed in favor of the debtor." Eggert v. Sendecky (In re Sendecky), 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002) (internal quotation marks omitted) (quoting Korte v. Internal Revenue Service (In re Korte), 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)).

Here, the Court finds that Tovar has failed to raise a genuine dispute of material fact and concludes that Debtor is entitled to judgment as a matter of law. In general, all of Tovar's allegations are bare and unsupported assertions. She simply insists that Debtor has not provided enough evidence to show that his bankruptcy papers are accurate. Tovar has not raised a genuine issue of material fact about whether Debtor accurately reported his income, properly listed his children as creditors, or manipulated the bankruptcy system. The Court addresses these particular assertions below.

Tovar has provided no facts that raise a genuine issue for trial about whether Debtor accurately reported his income. Tovar merely points to fact that Debtor has not filed W-2's to support his income and her suspicion that he underreported his income. Tovar also argues that Debtor failed to account for his per diem for food. These bare assertions do not raise a genuine issue of fact.

Debtor's income information is consistent with the information on his tax returns. Debtor correctly notes that the income information used in the bankruptcy came from his tax returns and points out that Tovar's exhibits actually show that his 2015 income was below what he reported on the 2015 tax return. Debtor has also accounted for his per diem by including it in the gross income calculation. Debtor's per diem is included in gross income and is shown on Schedule I of his bankruptcy petition. The nontaxable per diem, coupled with his taxable wages, makes up the gross income listed on his Schedule I. In all, Tovar simply asserts that Debtor's income information is wrong and argues that Debtor has not filed enough documentation to prove that he accurately reported his income. She has, however, failed to provide evidence to support her assertions.

Tovar's argument that Debtor improperly and fraudulently failed to list his children as creditors in his bankruptcy is simply insufficient. She maintains that Debtor borrowed money from his children and has yet to pay them back in full.

In 2016, at the state court trial on Tovar's claim, Debtor expressed some intent to pay back some of the money he received from his children. There is no

9

evidence in the record, however, that any of his children were creditors at the time of his bankruptcy filing in 2017. Tovar has not provided any evidence that Debtor's children were—in fact—creditors when he filed bankruptcy. Tovar received contact information for two of Debtor's children. She provided nothing from them to show that they have claims against Debtor. Tovar's bare assertions on these issues are insufficient to raise a genuine issue of fact for trial.

Tovar's final argument—that that Debtor should not be allowed to have his debts discharged because he has manipulated the bankruptcy system—is also without factual support. Tovar claims Debtor's only reason for filing bankruptcy was to avoid paying the court ordered judgment that she obtained against him. Tovar complains that Debtor has not attempted to resolve the matter outside of court or to work with her to set up a payment plan and holds these facts out as evidence of his manipulation. Additionally, Tovar suggests that Debtor quit his job and then went back to the same position to avoid having his wages garnished.

None of these allegations, even if they are true, would show that Debtor manipulated the bankruptcy system, made a false oath, or is otherwise working a fraud on the Court. To the extent that Tovar is arguing that Debtor has the ability to pay his debts (apart from his alleged underreported income), Tovar has provided no evidence to show that Debtor has assets or means to do so.

The fact that Debtor avoided her collection actions, did not attempt to negotiate before filing bankruptcy, and is now seeking a bankruptcy discharge do

not show a misuse of the bankruptcy system. The following case thoroughly sets out this reasoning in the context dismissal for bad faith:

> As additional grounds for dismissal on the basis of bad faith, the Movants point to Lancaster's failure to make any payments to them on the state court judgments and allege that he evaded or delayed their collection efforts for almost 16 months before filing bankruptcy. There is no dispute that Lancaster did not, prior to filing his bankruptcy petition, make any payments to the Movants on their state court judgments. However, the Court does not believe that this fact can be translated into a finding of bad faith . . . . In this Court's experience, many debtors do not make payments to their judgment creditors and do not file bankruptcy until the creditors have exerted substantial financial pressure on the debtors, usually by way of a garnishment or a foreclosure proceeding. If a failure to pay prepetition judgment creditors were to be considered bad faith in the filing of a bankruptcy, many cases would be subject to dismissal on that basis. Virtually all bankruptcy cases are filed because the debtors have been unable—and in many cases, unwilling—to pay their creditors. The Court does not consider a debtor's failure (or refusal) to voluntarily pay prepetition creditors to be an indication of bad faith . . . .

In re Lancaster, 280 B.R. 468, 477 (Bankr. W.D. Mo. 2002). This reasoning applies here. The fact Debtor has not paid, or even attempted to pay, Tovar and sought bankruptcy relief after Tovar started garnishing his wages is not evidence that he is manipulating the bankruptcy system. Standing alone, or even in combination with the allegations and suspicions noted above, this does not show fraudulent or false statements in connection with the bankruptcy necessary to prohibit a discharge.

Section 727(a)(4)(A) requires a showing that Debtor made a false statement under oath that Debtor knew to be false. Tovar provided no evidence that Debtor

11

made such a representation in this case. Based on this record, Tovar has failed to provide evidence that Debtor did not honestly and accurately report his income and financial situation in this bankruptcy. Her suspicions and beliefs are not enough. Debtor is entitled to summary judgment on her complaint.

## CONCLUSION

**WHEREFORE**, Defendant's Motion for Summary Judgment is GRANTED.

**FURTHER**, Plaintiff's Motion to Request Judgment Remain in Place is DENIED.

Dated and Entered:

December 21, 2017

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE